## Madara and Spang *versus* Eversole.

1. The plaintiff in ejectment made out a primâ facie title under a sale of land as unseated. The defendant gave evidence, which was *uncontradicted*, that for the years for whose taxes the land was sold it had been cultivated, &c. The court instructed the jury that upon "the undisputed" testimony the land was seated, and the treasurer's sale was void. *Held*, to be error in withdrawing the case from the jury.

2. The credibility of the witness, although uncontradicted, was for the jury.

3. A primâ facie title having been made out by the plaintiff, nothing but an express admission of the facts in the testimony of the witness would warrant withdrawing the case from the jury.

4. The plaintiff gave in evidence the treasurer's and commissioners' books, the sale of the land in 1856 to the commissioners, deed to them, and from them to Spang in 1864, until which time the deed remained in the commissioners' office. The defendant gave evidence, by the commissioners and their clerk, that there had been no sale to the commissioners. The court instructed the jury that no title passed to the commissioners, and that they should find for the defendant. *Held*, to be error in withdrawing the case from the jury.

May 11th 1869. Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Error to the Court of Common Pleas of *Bedford county:* No. 2, to May Term 1868.

This was an action of ejectment, for about 103 acres of land, at the suit of James Madara and G. H. Spang, against Abraham Eversole: the writ was issued February 1st 1866. The case was tried February 21st 1867 before Taylor, P. J., of the 24th district.

The plaintiffs showed a warrant and survey to William Montgomery for 474 acres: assessments on the tract from "Unseated Land Records" from 1819 to 1867: sale June 9th 1856, of tract for taxes of 1854 and 1855 to county commissioners, from "Treasurer's Sale Book of Unseated Land:" Deed, David Over,

[Madara *v.* Eversole.]

treasurer, to John Conrad, William Whetstone and Henry J. Bruner, commissioners, August 18th 1856, the deed having remained in the commissioners' office till 1864; sale to G. H. Spang, by commissioners, August 18th 1864, from "Commissioners' Sale Book:" deed from commissioners to Spang, June 14th 1864; deed from Spang to Madara, July 24th 1864, for an undivided half of the tract. The tract in dispute is part of these 474 acres.

The defendant gave evidence that the land was in 1848 or 1849 marked "seated," by order of the commissioners, and afterwards put on the unseated list again and the taxes for 1851, 1852 and 1853, paid by the owner, as *unseated* land. He gave evidence also that one Fishel cleared a small portion, one, two or three acres, of the tract in dispute about 1820, the owner came about fifteen years after, and then Fishel left. Jacob R. Brown, who appeared to have lived on an adjoining tract, under a lease from one Whitehead, cleared 8 or 10 acres, including the Fishel clearing. In 1854 D. O. Hoover moved on a part of the Montgomery tract, not that in dispute. Brown had mowed the Fishel part the year before, Hoover mowed it in 1854 : he knew to whom the land belonged, but did not claim it as his own; he pastured and farmed it up to 1859, when he abandoned it. A man named Bare first bought the tract in dispute, and in 1860 sold it to the defendant, who has farmed it ever since. There was other evidence for the purpose of showing that the land was seated. The defendant gave evidence by A. S. Russell, clerk of the commissioners in 1854 and 1856, that he was at the treasurer's sale June 9th 1856; Whetstone was the only commissioner present, he bought no tracts at the sale; Over, the treasurer, had notice that the commissioners would buy no land at the sale; the commissioners afterwards refused to accept the lands marked on the treasurer's list as sold to them; the commissioners had not bought them. Whetstone and Long, commissioners, testified substantially in the same manner. There was evidence also by plaintiff that the line of the part of the land which was cultivated was marked so as to separate it from the remainder.

The foregoing statement, with the charge of Judge Taylor, will sufficiently exhibit the case.

The judge, after stating the plaintiffs' evidence, said :—

" This evidence, with the writ, established, primâ facie, the plaintiffs' case; or, their right to recover the land in possession of defendant, unless some sufficient reason why they should not have a verdict in their favor, has been furnished by the defendant.

" The defendant, who has not seen fit to inform us directly, how he is in possession, or under what title he claims to hold it, but who appears, nevertheless, by the general evidence in the cause, to have purchased from somebody, and to be there at least under color of title, and not a naked intruder, rests his defence upon two

12 P. F. SMITH—11

[Madara *v.* Eversole.]

grounds : first, that the William Montgomery tract, in 1854 and 1855, the years in which the taxes upon it for which it is claimed to have been sold by the treasurer to the commissioners, were assessed as unseated, was, as he alleges, *seated*, and not liable to sale for taxes as unseated land, and that, therefore, the sale, assuming there was a sale, was void ; and, secondly, that there was no sale to the commissioners in 1856, assuming that the land was unseated, and the taxes properly chargeable upon it as such, which vested in the commissioners of the county any title which could be sold or conveyed by the successors in office to the plaintiffs.

First—With regard to the first general ground of defence," (the judge here referred in detail to the defendant's evidence on this point.)     *     *     *

[" It would thus seem that the assessor and commissioners in 1848 regarded and treated the tract as *seated*, if it be not plainly shown that the commissioners subsequently, and at the time of the assessment and sale, so regarded and treated it; and still after- wards.  And it is our opinion that, in view of the general facts of the case, they properly so regarded and treated it.  A survey which had four different improvements upon as many parts of it, was surely not properly assessed as entirely unseated.  The assessor, who is supposed to ascertain and know the boundaries of lands assessed, should certainly, in such a case, ascertain what part of the tract, if any, is not chargeable to the person of some cultivator or occupant with the payment of the taxes, and such part of the tract, if there remains such a part, should be so taxed.  A reasonable degree of official care and accuracy would, it seems to us, exact this; and it is our opinion, in view of the cases which rule, that when part of a tract is cut off and occu- pied, the balance may be assessed as unseated, it is fairly due to all interested in a case like this, that the part should be ascertained and assessed as a part, and not, as appears to have been done here, as the whole of the tract.  The tract was marked ' *seated*,' by directions of the commissioners in 1848.  It is alleged for the defendant, that, having been so marked, it could not be returned to the unseated list without notice to the owner ; and that, without such notice, a sale of it for taxes, as unseated, would be void.  It is answered that payment of the taxes after- ward implies such notice, or knowledge of the fact, and here would be a question for the jury.  But, aside from this, and without undertaking to rule the case on the ground that the commissioners treated, and properly, the tract as seated, it is our opinion that, upon the uncontradicted and undisputed testimony of David C. Hoover, it was in point of fact *seated*, and not liable to taxation and sale as unseated, in 1854 and 1855; and that the sale to the commissioners in 1856, assuming a sale, was void ;

[Madara *v.* Eversole.]

and that your verdict, for this reason, should be for the defendant. The testimony of Hoover as to the occupancy of part of the land in controversy, is not disputed. It is our province and duty, therefore, to pass upon the point as matter of law; and, since the second ground of defence is, in our opinion, decisive of the case, it is best that it should be here put in such a shape, that, if it goes up, every question in it may at once be settled, and prolonged litigation averted.

" We have said that the material facts as to the use and occupancy of the 1½ acres on this part of the tract, at the time of the assessment, are not disputed. It is not disputed that it was occupied in 1854 and 1855. It was so used and occupied, not by mistake, but with a knowledge of the owner, and with the intention of accounting to him for the rent. The case of Sassaman *v.* Jackson, which explains and qualifies that of Ellis *v.* Hall, repudiates the doctrine in the latter case, that the responsibility of an intruder or occupant is limited to his claim. It is the most recent case upon this point, and, we think, rules it.]

" Second. [But the second general ground of defence, is plainly, in our opinion, decisive of the case. And here there are no controverted facts. There was *no sale* of the William Montgomery tract by the treasurer to the commissioners in 1856. The proof of this is full and clear. Although deeds were made out and acknowledged for the Montgomery and other tracts, it was done by the treasurer *after the sale.* ' They were not' *bid off* at the public sale. The commissioners, only one of whom was present, bid for, and bought no lands at the sale, but expressly refused to do so. They had, on the contrary, instructed the treasurer not to sell; and distinctly refused to receive or have anything to do with the deeds for any of the tracts, which, *after the sale,* he marked on his list, as sold to the commissioners. These facts are distinctly proved by Mr. Russell, who was at the time clerk of the commissioners, and who was at the treasurer's sale and kept for him the sale list, and by other witnesses, and are not controverted. This was no sale or purchase. The treasurer had authority only to sell ' *in pursuance of public notice, and by open vendue,*' and the commissioners could only ' *bid off* ' lands *when so set up at such public sale* by the treasurer, and not bid by others to a specified amount. There was no sale, therefore, of the Montgomery tract to the commissioners; and no title vested in them or their successors by his deed, which the latter could convey upon this ground. The case of the plaintiff plainly failed, and, for the reasons here given, as well as upon the other general ground taken in the defence, we instruct the jury to return a verdict for the defendant."]

The verdict was for the defendant. On the removal of the case to the Supreme Court, the plaintiffs assigned the parts of the charge in brackets for error.

*S. L. Russell, J. Cessna* and *Kimmell & Lingelfelter*, for plaintiffs in error.—Where the cultivated part of a tract is cut off by lines marked on the ground, the residue may be assessed as unseated: Campbell v. Wilson, 1 Watts 503; Harper v. McKeehan, 3 W. & S. 238; Mitchell v. Bratton, 5 Id. 454; Forster v. McDivit, Id. 359. Hoover being on another tract was not personally responsible for these taxes: Ellis v. Hall, 7 Harris 296. The commissioners had no right to mark the tract "*seated*" without the owner's consent: Milliken v. Benedict, 8 Barr 176. The commissioners' records showed that tax was afterwards paid for it as *unseated*, this is conclusive: McCall v. Lorimer, 4 Watts 351; Lyman v. Philadelphia, 6 P. F. Smith 488; Rosenberger v. Schull, 7 Watts 390; Crum v. Burke, 1 Casey 377.

*J. R. Durburrow* and *W. M. Hall*, for defendant in error, submitted no paper-book or oral argument.

The opinion of the court was delivered, July 6th 1869, by

WILLIAMS, J.—The plaintiffs claimed title to the land in controversy under a sale by the treasurer for non-payment of taxes. In support of their title they gave in evidence " The Assessment Books of Unseated Lands" in the commissioners' office, showing that the tract was assessed as unseated for county, state and school taxes for the years 1854 and 1855; the treasurer's " Sale Book of Unseated Lands," showing its sale by the treasurer to the commissioners in 1856 for the non-payment of the taxes; and the " Commissioners' Sale Book," showing its sale by the commissioners in 1864 to Spang, one of the plaintiffs; and they followed this evidence by the deed of the treasurer to the commissioners, by the deed of the commissioners to Spang, both of which were duly executed and acknowledged, the former in 1856 and the latter in 1864, and by the deed of Spang to Madara, his co-plaintiff, for the undivided half of the tract. The court instructed the jury that this evidence, with the writ, established, primâ facie, the plaintiffs' right to recover the land in the possession of the defendant, unless some sufficient reason why they should not recover a verdict in their favor had been furnished by the defendant.

The defendant alleged that the land was seated at the time the taxes were assessed, and that the treasurer had no authority to sell it, even if he did, for their non-payment. He gave evidence showing that about an acre and a half was cleared, near the line of the tract, some forty years ago by one Fishel; and that since that time it had been occupied, or used and cultivated by some one. And he proved by the testimony of Hoover, the owner of the adjoining tract, that he used it for farming purposes from 1854 to 1858—that he mowed it in 1854, pastured it in 1855, and raised grain on it the following years. Upon the testimony of Hoover the court instructed the jury that the land was in point

[Madara *v.* Eversole.]

of fact seated, and not liable to taxation and sale as unseated in 1854 and 1855; and that the sale to the commissioners in 1856, assuming a sale, was void; and that their verdict, for this reason, should be for the defendant. This instruction withdrew the case wholly from the jury and was clearly erroneous, unless the facts testified to by Hoover were admitted by the plaintiffs. If they were not admitted, it was the province of the jury to determine, under proper instructions, whether the land was seated, or not, at the date of the assessments. Even if the testimony of Hoover was uncontradicted, the court was not at liberty to assume the facts to be as stated by him, and give a binding direction thereon to the jury. But if the facts stated by him were admitted by the plaintiffs, then the legal conclusion arising from them was for the determination of the court. But we find no evidence of any such admission in the record, nor anything from which it can be inferred unless it be the remark of the court that " the testimony of Hoover, as to the occupancy of part of the land in controversy, is not disputed." If the court meant that the plaintiffs admitted that the testimony of Hoover was true, then there was no error in declaring that it was legally sufficient to show that the land was seated, and not liable to taxation and sale as unseated. But if the court thought that his testimony was not contradicted by any evidence in the cause, its credibility was for the jury, and the case should have been submitted to their determination. The plaintiffs had given in evidence the assessment books which showed primâ facie that the land was unseated at the time it was assessed, and nothing but an express admission on their part that the facts testified to by Hoover were true, would have warranted the court in withdrawing the case from the jury. As it does not clearly appear that the plaintiffs made any such admission, the 1st assignment is sustained.

But the court fell into a palpable error in instructing the jury that there was no sale of the tract by the treasurer to the commissioners in 1856; and that no title vested in them or their successors by his deed. In reference to this ground of defence the court say : " And here there are no controverted facts." If there were "no controverted facts," it is certain that the defendant's evidence was in direct conflict with that given by the plaintiffs. In support of the sale the plaintiffs relied on the entry in the treasurer's sale book of unseated lands, showing the sale to the commissioners, and upon his deed to the commissioners in pursuance of the sale, which was duly executed and acknowledged, and which had remained in the commissioners' office from 1856 until its delivery to the plaintiffs in 1864 by the commissioners together with their deed for the land. To rebut this evidence, the defendant proved by two of the commissioners acting as such in 1856 and by the clerk in the commissioners' office at that date, that no

[Madara *v.* Eversole.]

such sale had taken place. It is quite probable that, on the evidence of these witnesses, the jury would have found, if the question had been left to them, that in point of fact there was no sale of the land by the treasurer to the commissioners. But whether they would, or not, is wholly immaterial. It is clear that under the evidence the plaintiffs were entitled to have the question submitted to the jury for their determination. It was a question of fact, and the court erred in withdrawing it from the jury.

We see no other error in the charge, but we are constrained to reverse the judgment because of the binding instructions of the court on the questions of fact raised by the evidence.

Judgment reversed, and a *venire de novo* awarded.