NORTHUMBERLAND COUNTY et al. v.
PHILADELPHIA AND READING
COAL & IRON CO.
No. 7980.

Circuit Court of Appeals, Third Circuit.
Argued July 7, 1942.
Decided Nov. 5, 1942.

John L. Pipa, Jr., and Daniel W. Kearney, both of Shamokin, Pa. (Carl Rice, of Sunbury, Pa., on the brief), for appellants.

Arthur Littleton, of Philadelphia, Pa. (Penrose Hertzler, of Pottsville, Pa., and Morgan, Lewis & Bockius and Howard W. Taylor, Jr., all of Philadelphia, Pa., on the brief), for appellee.

Before MARIS and GOODRICH, Circuit Judges, and BARD, District Judge.

MARIS, Circuit Judge.

On February 26, 1937 the District Court for the Eastern District of Pennsylvania approved the petition of the Philadelphia and Reading Coal and Iron Company for reorganization under Section 77B of the

Bankruptcy Act, 11 U.S.C.A. § 207, and continued the debtor in possession of all its real and personal property. On December 20, 1938, with the consent of the court, the debtor conveyed title to 123,000 acres of land to third persons. Portions of these lands were assessed for taxation as unseated land. Taxes aggregating $174,330.-58 accrued on these lands for the years 1937 and 1938, during all but the last twelve days of which period the debtor held title. In May, 1939, the district court authorized the debtor to pay all taxes then due. Because the court refused to go further and expressly direct the debtor to pay the taxes the County of Northumberland, as well as certain boroughs, townships, school districts and poor districts within the county and in which the land lay, petitioned for a rule to show cause why the debtor should not be directed to pay all taxes. The court referred the petitions to a special master, who recommended that the claims for taxes upon the unseated lands which had been conveyed away by the debtor on December 20, 1938 be denied. In the meantime the debtor paid the taxes upon its seated lands and upon those unseated lands which it had retained. The district court dismissed the exceptions to the master's report and dismissed the petitions. The present appeal followed.

■ The petitioners contend that the taxes assessed were chargeable to the debtor as administrative expenses. It may not be doubted that taxes upon land, just as wages and rent, may become an obligation of a receiver, trustee in bankruptcy or a debtor in possession as a proper charge in the administration of the estate. This is so when the receiver, trustee or debtor actually utilizes in the operation of the business the land upon which the taxes are assessed. Taxes then become an administrative expense and as such are payable without respect to whether the land has been described by the assessors as seated or unseated. Hennepin County, Minn. v. M. W. Savage Factories, 8 Cir., 1936, 83 F.2d 453, cert. den. 299 U.S. 555, 57 S.Ct. 16, 81 L.Ed. 408. If, therefore, the debtor here used the land during the two years when it held title the taxes thereon would be payable by the debtor as an administrative expense. The record before us contains no evidence that such was the case. The petitioners argue that the dearth of evidence on this issue

was due to no fault of theirs, that they offered evidence at the special master's hearings that the land was in fact used by the debtor, but that this evidence was excluded by the special master upon objection by the debtor. These rulings of the special master are assigned as error and form the subject matter of several exceptions to the special master's report. They need not be considered further by us, however, since the cause must go back for further hearing for reasons about to be stated. Upon that hearing the petitioners will have the opportunity to offer any evidence which is relevant to the question whether the debtor utilized the land in the conduct of its business during the period of reorganization and while the land was owned by it.

The debtor contended in the district court that it had no personal liability for taxes assessed against unseated lands. In answer to this contention the petitioners urged that though the lands were placed upon the unseated list they were in fact seated. They offered evidence to prove this to be so but the special master sustained the debtor's objections to the admission of this evidence. The district court dismissed the exceptions based upon these rulings. The petitioners argue that this was error. We are thus confronted with the question whether there is personal liability on the part of the owner for taxes assessed upon Pennsylvania land which has been assessed as unseated but which was at the time of assessment in fact seated. As a preliminary to the consideration of this question it will be useful to examine briefly the early statutes dealing with the taxation of lands in Pennsylvania in order to ascertain just when and how the distinction for tax purposes between seated and unseated lands arose.

The earliest act of the provincial legislature which dealt with the raising of county rates provided for the assessment of taxes upon lands but contained no provision for a classification of lands as seated or unseated. Collection was by distraint upon the goods of the owner.[1] In 1717 the county taxing officials were directed in assessing lands for taxes to take note of how much of the land was sowed with corn and also to account for all lands surveyed or taken up belonging to non-residents. Collection was by distraint upon the goods of the owner and by imprisonment of the owner.[2] In 1724 the taxing officials were

---

[1] Nov. 27, 1700, 2 Stat. 34.  [2] Feb. 22, 1717-18, 3 Stat. 175.

directed to note "what tracts and parcels of land and tenements they [i. e. residents] respectively hold in such township; and how many and what parts of those tracts are settled, improved or cultivated, and how much of the same land is sowed with corn." The assessors were directed to exempt "out of such assessments all unsettled tracts or parcels of land: (This is to say) such tracts of land as at the time of the said assessment making are unseated, although the same were formerly accustomed to be rated in assessments." Enforced collection continued to be by distraint upon the goods and by imprisonment of the owner.[3] This act contains the earliest statutory reference to unseated lands.

In 1755 in an act levying provincial taxes to procure funds for the King's use the legislature expressly provided that the exemption of unimproved lands from assessment which had been granted by the Act of 1724–25 for raising county rates was inapplicable, and the act provided for the assessment and taxation of such lands. By that act, for the first time, the unimproved lands themselves were authorized to be sold for unpaid taxes.[4] Many successive acts reiterated the intention of the legislature to reach unimproved or unseated lands upon assessments for provincial[5] and later state taxation.[6] It was not until 1785, however, that the sixty years old and apparently well-rooted exemption of unseated lands from county taxation was removed. By an act passed in that year the county commissioners were empowered "to assess and levy a proportionate part of county tax on all unseated tracts of land." By this act the collection of unpaid taxes thereon was to be made in the same manner as was already provided for in the case of state taxes.[7] Thereafter many acts were passed which were intended to provide safeguards to protect the owners of unseated lands from an unfair or improvident sale of their lands.[8] In 1815 it was again provided by an act, the

provisions of which are still in force, that taxes on unseated lands were collectible by the sale of the lands.[9]

Our résumé of the statutes demonstrates that in early colonial times taxes on land were collectible from the owner by distraint upon his goods and chattels or by imprisonment of his person. This was undoubtedly true as to both seated and unseated lands prior to 1724. Between 1724 and 1755 unseated lands were wholly exempt from taxation. Commencing with the Act of 1755 the legislature in dealing with the methods for collecting the taxes which it had again imposed (for provincial purposes) on unseated lands concerned itself solely with provisions for the sale of the lands and did not at any time refer to the collection of such taxes from the owner or to his personal liability therefor. On the other hand there were during this period many legislative references to the personal liability of owners of seated lands for taxes. In fact it was not until 1844 that statutory provision was made for the sale of seated lands for taxes and then only if it appeared that personal property could not be found thereon sufficient to meet them and that the owner after demand had neglected or refused to pay them for the space of two years.[10]

The difference in the legislative treatment of the problems of delinquent tax collection involved in the two types of land is quite understandable. In the case of seated lands the owners mostly resided on the lands and they or their tenants nearly always had goods or chattels thereon. Under these circumstances collection from the owner was indicated and it was the method adopted. In the case of unseated lands, however, there were never on the lands goods or chattels subject to distraint. The owners were very frequently nonresidents of the county and often land speculators[11] residing in other states. The land

[3] Mar. 20, 1724-25, 4 Stat. 10.

[4] Nov. 27, 1755, 5 Stat. 201.

[5] Apr. 22, 1758, 5 Stat. 337; Apr. 12, 1760, 6 Stat. 7; May 27, 1769, 7 Stat. 307.

[6] Apr. 3, 1779, 9 Stat. 360; Mar. 16, 1785, 11 Stat. 454.

[7] Mar. 25, 1785, 11 Stat. 503.

[8] Sept. 11, 1786, 12 Stat. 264; Nov. 27, 1786, 12 Stat. 338; Sept. 22, 1788, 13 Stat. 83; Mar. 18, 1789, 13 Stat. 224; Sept. 26, 1789, 13 Stat. 336; Apr.

6, 1790, 13 Stat. 530; Mar. 24, 1791, 14 Stat. 27; Apr. 3, 1792, 14 Stat. 229; Apr. 17, 1795, 15 Stat. 322; Apr. 3, 1804, 4 Sm.L. 201.

[9] Mar. 13, 1815, P.L. 177, 72 Pa.P.S. § 5981.

[10] Apr. 29, 1844, P.L. 486, § 41, 72 Pa. P.S. § 5984.

[11] "And forasmuch as large tracts of valuable lands have been located and held in this province without intention of improvement, but merely in expectation

was thus the only reasonably certain and tangible security for the tax and its sale was the logical method of collection. Although the Pennsylvania legislature never at any time relieved the owners of unseated lands of personal liability for taxes the greater convenience of enforcing collection by sale of the lands doubtless resulted in practice in the exemption of the owner from personal liability. When the Supreme Court of Pennsylvania in Stokely v. Boner, Pa.1823, 10 Serg. & R. 254, followed the dictum of Judge Gibson in Burd v. Ramsay, Pa.1822, 9 Serg. & R. 109, 114, that "taxes on unseated lands, have never I believe been considered a charge on the person of the owner," it transformed into law this custom of exempting the owners from personal liability for taxes on unseated land. The rule laid down in that dictum is undoubtedly the law of Pennsylvania today.[12] Indeed the petitioners concede that the Pennsylvania law imposes personal liability for taxes upon the owners of seated lands only, but they urge that this personal liability depends upon whether the land is in fact seated at the time of assessment and not upon whether the assessor has properly performed his duty by entering the land upon the assessment list as having that character.

We think that the petitioners' contention is supported by the Pennsylvania authorities and must be sustained. In Everhart v. Dolph, 1890, 133 Pa. 628, 642, 19 A. 431, 432, the Supreme Court of Pennsylvania said: "Whether a tract of land is seated or unseated depends altogether upon the appearance it presents to the assessor at the time of the assessment. If it has been or is being improved by clearing or cultivation, or by the erection of a building upon it, or if the property shows such permanent improvements as indicate a personal responsibility for the taxes, it is the assessor's duty to enter it upon the seated list."

The rule thus laid down is that the question whether land is seated or unseated depends altogether upon what has been or is being done upon it, the court indicating that personal liability for taxes arises as a direct consequence of the improvement itself.[13] That the liability does not arise if the assessor erroneously places on the seated list land actually unseated and is not extinguished if land in fact seated is scheduled as unseated clearly appears when we consider the rationale of the cases dealing with sales of land for delinquent taxes.

As was quite to be expected, in the early days when the amount of unseated land in the state was much greater than it is today many cases arose in which it appeared that land actually seated had been erroneously assessed on the unseated list and sold for taxes as unseated land. In these cases the question arose as to whether the validity of the purchaser's title rested on the fact that the lands were actually unseated when the assessment was made or whether the purchaser could rely on the assessor's classification of the lands as unseated even though the classification was mistaken.

In Kennedy v. Daily, Pa.1837, 6 Watts 269, one of the earliest of these cases, the plaintiffs who claimed title under the former owner brought an action of ejectment against the purchaser of land sold for taxes as unseated. The plaintiffs were permitted to prove that the land was in fact seated when it was assessed as unseated, the Pennsylvania Supreme Court saying (p. 272): "In all controversies, as in the present instance, it becomes an important inquiry whether the land sold was seated or unseated, at the time it was assessed; for if the former, it has been repeatedly decided that the sale is void." This rule, based upon the proposition that the validity of the title procured at the tax sale depends upon whether the land sold was in fact unseated at the time it was assessed as unseated, has been frequently applied.[14]

---

of receiving hereafter higher prices for private advantage, by means whereof those lands remain uncultivated and great numbers of people [have] been necessitated to leave this province and settle in other colonies where lands are more easily purchased to the manifest injury and charge of the public." Act of Nov. 27, 1755, 5 Stat. 201.

[12] Erwin v. Helm, Pa.1825, 13 Serg. & R. 151, 154; Fager v. Campbell, Pa. 1836, 5 Watts 287; Neill v. Lacy, 1885, 110 Pa. 294, 1 A. 325.

[13] Ellis v. Hall, 1852, 19 Pa. 292; Stoetzel v. Jackson, 1884, 105 Pa. 562.

[14] Erwin v. Helm, Pa.1825, 13 Serg. & R. 151, 154; Campbell v. Wilson, Pa. 1833, 1 Watts 503; Harbeson v. Jack, Pa.1833, 2 Watts 124; Sheaffer v. McKabe, Pa.1834, 2 Watts 421; Fish v. Brown, Pa.1836, 5 Watts 441; Patterson v. Blackmore, Pa.1839, 9 Watts 104; Cranmer v. Hall, Pa.1842, 4 Watts & S. 36; Ellis v. Hall, 1852, 19 Pa. 292; Madara v. Eversole, 1869, 62 Pa. 160.

■ The rule was necessarily based upon the proposition that land which is in fact seated is not subject to taxation as unseated land even though the assessor has mistakenly so listed it. Since it cannot be assumed that the legislature intended such land to escape taxation altogether, the necessary corollary to this proposition is that land thus erroneously listed is nevertheless taxable in some form. It must follow that the owner of such land is personally liable for the taxes under the general rule which, as our examination of the statutes shows, has from the very earliest times been uniformly applied to all land in the Commonwealth with the sole exception of unseated lands. Having failed to bring himself within the exception the owner of such land is necessarily bound by the general rule.

■■ That the actual character of land rather than its classification by the assessor determines the way in which taxes on it are to be collected appears also from the cases which hold that unseated land assessed as seated, may, with notice to the owner, be transferred by the county commissioners for purposes of tax sale to the unseated list and sold as such.[15] It likewise appears from the Act of June 3, 1885, P.L. 71, § 1, 72 Pa.P.S. § 5933, by which the Pennsylvania legislature provided that: "All sales of seated or unseated lands within this commonwealth which shall hereafter be made for arrearages of taxes due thereon, shall be held, deemed and taken to be valid and effective irrespective of the fact whether such lands were seated or unseated at the time of the assessment of such

taxes. Provided, That nothing in this act contained shall validate or authorize the sale of any land which was in fact seated at the time of the assessment of the taxes thereon, in any case where there was sufficient personal property on the premises to pay all the taxes assessed thereon, liable under the laws of this commonwealth to have been seized therefor."

It will be seen that this act, while validating sales of lands as seated or unseated which were not so in fact, made it clear that the validation did not extend to lands which were in fact seated if there was sufficient personal property on the premises liable to pay the taxes. The act thus clearly contemplated that the true character of land as seated should always be open to inquiry in determining the validity of proceedings taken to collect the taxes upon it.

■■ The debtor points to the rule that since there is in Pennsylvania adequate statutory provision for the correction of assessments by way of administrative revision and appeal to the courts[16] assessments are not subject to collateral attack.[17] It urges that the classification by the assessors of land as seated or unseated is an essential element of its assessment and is, therefore, likewise conclusive. The conclusive character of assessments must be conceded but it is clear from the decisions and statutes to which we have referred that the debtor's contentions that classification is part of the assessment cannot be. On the contrary it would seem that the word "assessment" as used in the statutes authorizing revision and appeal refers to the valuation and tax levy alone.[18] Certain it is that ever since

[15] Larimer v. McCall, Pa.1842, 4 Watts & S. 133; Milliken v. Benedict, 1848, 8 Pa. 169; Commercial Bank v. Woodside, 1850, 14 Pa. 404; Stewart v. Trevor, 1867, 56 Pa. 374.

[16] Article V of The General County Assessment Law, 72 Pa.P.S. §§ 5020—501 to 5020—521, incl., provides full opportunity for the revision by the county board of revision, upon the appeal of interested owners or municipalities, of the assessments made by the assessors. Furthermore any owner or municipality aggrieved by the action of the county board of revision may appeal to the court of common pleas and from its decision to the Supreme or Superior Court. The right of cities, boroughs, townships, school districts and poor districts aggrieved by any assessment to appeal therefrom to the board of revision and the courts was first granted by the Act of May 10, 1921, P.L. 441, 72 Pa.P.S. § 5183, and was

continued in section 520 of The General County Assessment Law, 72 Pa.P.S. § 5020—520.

[17] Van Nort's Appeal, 1888, 121 Pa. 118, 15 A. 473; Stratford v. Franklin Paper Mills Co., 1917, 257 Pa. 163, 101 A. 349; Philadelphia v. Phillips, 1917, 65 Pa.Super. 578; Susquehanna Collieries Company's Appeal, 1939, 335 Pa. 337, 6 A.2d 831.

[18] "The rate per cent. being fixed, and a valuation of the land returned, constituted an assessment." Heft v. Gephart, 1870, 65 Pa. 510, 518.

"Assessed, as used in our taxing statute and as here used, means a certain sum of money, fixed under a given rate on property valuation, due and payable as taxes." Broad & Sansom Realty Co. v. Fidelity Bldg. Corp., 1928, 292 Pa. 287, 291, 141 A. 34, 35.

"Assessment is thus defined: 'A valuation of property for the purpose of tax-

568

the passage of the Act of April 3, 1804, P.L. 517, 4 Sm.L. 201 § 2, 72 P.S. § 5481, unseated lands have been "valued and assessed in the same manner as other property". Indeed upon the debtor's theory the decisions which hold that a tax title to land sold as unseated may be attacked upon the ground that the land was in fact seated are in hopeless conflict with those which declare that assessments are not subject to collateral attack. There is, however, an obvious basis for treating the assessor's act in classifying land as seated or unseated as different in character and effect from his act in valuing the land. The classification is the mere ministerial act of recording a visible condition,[19] whereas the valuation involves the exercise of discretionary judgment by the assessor after taking many factors into consideration.

We conclude, therefore, that the debtor is liable for the taxes upon any of the lands here involved which were in fact seated at the time of assessment and that the petitioners should have been permitted to offer evidence as to the actual character of the land. It follows that the rejection of the evidence offered as to this was prejudicial error. The cause must go back for a further hearing of the question since the court must determine whether the lands here in controversy were in fact seated or unseated.

The decree of the district court is reversed and the cause is remanded for further proceedings consistent with this opinion.

ation; such valuation and an adjudging; the entire plan or scheme fixed upon for charging or taxing.' The act of assessing, as that word is here used, is but a phase of the whole process of taxation." Meadville City v. Odd Fellows' Home, 1937, 128 Pa.Super. 180, 183, 193 A. 662, 664.

"The word 'assessment' is often loosely used to mean the preliminary valuation of the subject matter of a tax by a board of assessors rather than more accurately a certain sum of money fixed under a given rate on property valuation." Hart's Appeal, 1938, 131 Pa.Super. 104, 108, 199 A. 225, 227.

[19] Rosenburger v. Schull, Pa.1838, 7 Watts 390; Stoetzel v. Jackson, 1884, 105 Pa. 562; Everhart v. Dolph, 1890, 133 Pa. 628, 19 A. 431.