## Kennedy *against* Daily.

6w269
157 10

In an action of ejectment involving the validity of a treasurer's sale for taxes, it appeared from the commissioners' unseated land book, that the taxes for which the land had been sold, were marked " paid:" it was *held* to be competent for the purchaser to prove, that such entry was made, after the sale to him, and that the payment was out of the purchase money.

Residence without cultivation or cultivation without residence, or both, constitutes *seated* land ; and as such, it is exempt from the operation of the law which regulates the sale of unseated land for the payment of taxes.

An accidental or temporary suspension of the actual occupation of land, does not place it in such a condition as would authorize a sale of it for taxes as unseated.

Whether a tract of land be seated or unseated, can never depend upon the amount of the product of the land, which might be distrained for the payment of the tax; if it be cultivated at all, it subjects the person of the cultivator to liability for the tax, and whenever this is the case, there is no such specific charge upon the land as would subject it to sale as unseated. It is not a valid objection to a treasurer's deed for unseated land sold for taxes, that it was acknowledged after the treasurer went out of office.

ERROR to the common pleas of *Tioga* county.

This was an action of ejectment for four hundred acres of land, by the heirs at law of Robert Kennedy, deceased, against John Daily.

The plaintiffs gave in evidence a patent for the land, to Robert Kennedy, dated the 15th of January 1813, and proved that he died intestate, and they were his heirs at law.

Defendant claimed the land by virtue of a treasurer's sale of it for taxes, to him; and gave in evidence the books of the commissioners' office, to show that the land had been regularly assessed as unseated, for the years from 1816 to 1821 inclusive, and that it had been sold for the payment of these taxes by John Beecher, treasurer of the county, to John Daily, the defendant, who received a deed therefor, dated the 11th of June 1822. Each part of this evidence as it was offered, was objected to for some irregularity, but the objections were all overruled. The only ones of sufficient importance to be noticed, were two. In the commissioners' unseated land book, opposite this tract of land, in the name of Robert Kennedy, and opposite the amount of tax assessed upon it, was marked " paid." This, the plaintiff contended, was conclusive evidence that the tax had been paid by the owner, and that, therefore, the sale was void. But the defendant offered to prove, that that entry

had been made after the treasurer's sale to him, and in consequence of his purchase money having been applied to the payment. The plaintiff objected to this evidence, but the court overruled the objection, and sealed a bill of exceptions. When the defendant offered in evidence the deed of John Beecher, treasurer, to John Daily, dated the 11th of June 1822, and acknowledged the 18th of February 1822, the plaintiff objected to it, on the ground that it was acknowledged after John Beecher, the treasurer, went out of office, and when Thomas Putman was treasurer of the county; the court overruled the objection, and sealed a bill of exceptions.

The following points were made by the plaintiff, upon which they were requested to charge the jury.

1. That if the jury believe that John Daily had removed off the tract in controversy, in the years 1818, 1820 and 1821, but still kept up his fence around the cleared land, and cultivated the same by raising grass or grain on the land, it was seated in contemplation of law, and could not be sold for taxes.

To which the court answered:    If the crops or profits of the place, were sufficient to pay the taxes, this proposition would be correct; otherwise, it would not.

2. That the accidental or temporary suspension of the actual occupancy of land, does not place it in such a condition, as will authorize a sale of it for taxes as unseated; and if the jury believe that Daily was absent from the land in 1818, but returned there again in 1819, such a suspension of possession would not render the tract unseated.

To which the court answered:    If Daily moved on the place, in 1819, and continued there, this proposition would be correct, but if he only went into the house for a few weeks, without intending to remain, whilst he could procure another house, and then moved off, and did not return, the jury might say whether he abandoned it.

The opinion of the court in the admission of the evidence, as contained in the several bills of exceptions, and in their answers to the plaintiffs' points were assigned for error.

*Parsons,* for plaintiff in error, as to the acknowledgment of the deed by the treasurer, after he was out of office, cited *Purd. Dig.* 437; 14 *Serg. & Rawle* 125.    As to the answers of the court to the points, cited 5 *Watts* 441; 2 *Watts* 421; 10 *Serg. & Rawle* 254; 12 *Serg. & Rawle* 300; 9 *Serg. & Rawle* 109.

*Williston,* for defendant in error.

The opinion of the Court was delivered by

Rogers, J.—This was an action of ejectment to recover a tract of land in the county of Tioga, containing four hundred and one acres, surveyed on a warrant, in the name of Robert Kennedy.

The plaintiffs, who are the heirs of Robert Kennedy, after proof that he died intestate, rested.

The defendant claimed title under a sale as an unseated tract for payment of taxes. He offered evidence to show that the land was regularly assessed from the year 1816 to 1821 inclusive; all of which, although opposed by the plaintiffs, was properly received by the court. The principal objection relied on was, that it appeared, from the commissioners' unseated land books, and from the documents themselves, which were offered in evidence, the taxes were paid. But to this the defendant replied, that although marked paid, yet that the entries were made after the land was sold, and that the taxes were in truth paid, not by the owner; but by the purchase money arising from the sale of the land, at the treasurer's sale. The argument of the plaintiff proceeds on the ground that the entries so made were conclusive evidence of the payment of taxes, by the owner; but this, although *prima facie* evidence of that fact, was open to explanation by whom and in what manner the payment was made, whether by the owner or by the money arising from the sale. It would seem to have been the practice in that county to make the same entry, whether the taxes were paid by the owner or in the manner stated. As it was a fact for the jury to decide, we see no error, either in the admission of the evidence or in the answer of the court, on this part of the case.

The plaintiff also excepts to the admission of the treasurer's deed to Daily. The exception is taken on the second section of the act of the 13th of March 1815, which provides that when the treasurer who makes sale of unseated land shall die, or be removed from office before he executes a deed to the purchaser, it shall be the duty of the treasurer to execute the deed and perfect the title. This case does not come within the purview of that section which proceeds upon a principle of necessity. The same treasurer who made the sale executes the deed, and this is the constant practice in the case of sheriffs, who acknowledge deeds of land sold by them after the time for which they have been elected. We see nothing wrong in the practice, and to cast a doubt on it now would unsettle the title to many estates held under titles so acknowledged by the sheriffs. There is no error in this part of the case, and this disposes of the bills of exceptions, and the answer to the first point.

The counsel for the plaintiff has propounded various points to the court, the answers to which form the subject of many exceptions. I shall not examine in detail all the exceptions, but shall content myself with observing that we perceive no error, unless in the answer to the seventh and ninth points. The court, among other things, were requested to instruct the jury that if they believed that John Daily had removed off the tract in controversy in the years 1818, 1820 and 1821, but still kept up his fence around the cleared land, and cultivated the same by raising grass or grain on the land, it was seated in contemplation of law. And again, that

the accidental or temporary suspension of the actual occupancy of land does not place it in such a condition as will authorize a sale of it for taxes as unseated; and if the jury believe that Daily was absent from the land in 1818, but returned there again in 1819, such a suspension of possession would not render the tract unseated. To each of these questions the plaintiff was entitled to a distinct affirmative answer, without any qualification whatever.   Unseated lands only can be sold for payment of taxes.   There is no personal liability for taxes assessed on unseated lands, and hence the necessity of making the land itself bear a portion of the burthen of taxation.   The owner of unseated lands frequently lives at a distance, and unless some person resides on the land, or is in some other way made answerable for the taxes, the collection of them would be so inconvenient and expensive as to amount to an almost total exemption.   To avoid this, the legislature have directed that the land may be sold, and have prescribed the mode and manner of sale. When, however, the lands are seated, no such necessity exists, as there is, in contemplation of law, a person who is personally liable for the payment of the tax.   The taxes assume the aspect of other debts, and may be collected by process against the individual who is personally liable, for payment.   In all controversies, as in the present instance, it becomes an important inquiry whether the land sold was seated or unseated, at the time it was assessed; for if the former, it has been repeatedly decided that the sale is void.   In Stokely v. Boner, 1 *Serg. & Rawle*, it is said, that the precise meaning of the term "unseated," as applicable to land, has not been fixed. With respect to one case, which may be put, and which is the one that usually presents itself, there can be no doubt.   When a family has not resided on the land, or profits have never been received from it, it will undoubtedly be considered as unseated: such is the situation of that species of property in the northern and western counties called wild land.   On the other hand, when profits continue to be drawn from the land, although no family reside on it, it can, with no propriety, be said to be unseated.   There are two modes in which wild, uncultivated land may be made to assume the character of seated tracts; and both these modes are adverted to in the case cited.   1, Where a family has resided on the tract; and 2, where profits are drawn from the land, although no family resides on it.   In other words, residence without cultivation, or cultivation without residence, or both, constitutes that species of property which may be properly denominated *seated,* and as such it is exempt from the operation of the acts which regulate the sale of unseated lands.   When the land is seated, the person is only liable for the tax; but when it is unseated, there is no personal liability, but the tax is laid specifically on the land, and not on the person of the owner.   These principles are distinctly recognized in all the subsequent cases, and particularly in Shaeffer v. M'Cabe, 2 *Watts* 421, and in Harbison v. Jent, *Ibid.* 124.   In the latter case

the court decided, in the very language of the last point, that an accidental or temporary suspension of the actual occupancy of the land does not place it in such a condition as will authorize a sale of it for taxes, as unseated.   On the trial of Shaeffer *v.* M'Cabe, 2 *Watts* 421, which was a case of cultivation without residence, I was of the opinion, and so charged the jury, that to constitute the land seated, the profits or produce must be equal in value to the tax.   In commenting on that opinion, the chief justice says: "that in regard to the adequacy of the produce of the tax, the direction was, perhaps, too favourable to the appellant."   Subsequent reflection has induced me to change the opinion which I then expressed, and to adopt that which is indicated in the remarks of the chief justice.   The rule has the merit of simplicity, and exempts it from the uncertainty which must necessarily arise from estimating the value of the products so as to determine the character of the tract. Besides, unless this be the rule, the tract which was seated this year, by the mere accumulation of the taxes would be unseated the next, which would cause uncertainty and embarrassment, without any corresponding advantages.   Cultivation, without regard to the value of the products, or its adequacy to discharge the taxes, renders the cultivator or resident personally responsible, and exempts the land from the specific charge to which it was before exposed; and this, in law, is deemed an adequate security, though nothing may be got from the cultivator of the soil.   It has, I believe, never been doubted that residence, of itself, makes it a seated tract; and I can discern no reason why cultivation should not have the same effect.   If the witnesses, Culver and Neil, (and their credibility is for the jury,) are believed, Daily went into possession of the tract in the latter end of the year 1816, and continued to reside on and cultivate the property until the fall of 1817.   From the moment, therefore, his residence commenced, the land ceased to be unseated, and Daily became personally liable for the taxes, without regard to the amount he received from the produce of the farm.   Nor did the land cease to be a seated tract because of his absence from the actual occupancy of it while he resided at the Marsh, at the Greenleaf tract, or at Starkweather.   It is of no manner of importance in what character Daily entered into possession, whether as an intruder, or under the contract with Mr Morris, the agent of Kennedy; nor is it material what was the value of the produce raised on the farm, either at the time or after he ceased actually to reside on it. It had assumed the denomination of a seated tract and must continue so, unless abandoned as such by the owner, which I am willing to admit it can be by such unequivocal acts or declarations as may discharge the owner or occupier from personal liability and subject the land again to a specific charge for the payment of the tax.   Thus, when the land, although once seated, has been, either from barrenness or some other cause, abandoned for a long time and suffered to lie waste.   When this happens, it may be left to

[Kennedy v. Daily.]

the jury to say whether the owner has manifested his determination to view it as no longer a seated tract. But to change the character of a tract from seated to unseated, will require a strong case, showing a fixed determination of the owner so to consider it; for the primary object of the legislature has been to charge the person and not the land, when the person, by ordinary means, may be made responsible. It is only from a supposed necessity that the land is subjected to a specific charge; and no such necessity exists where the land has been once seated. The probability is, that the occupier or cultivator will be abundantly able to pay all the taxes which may be assessed. In the present instance it cannot be pretended Daily abandoned the land. It is very certain the owner never did. Although absent from the land, he continued to cultivate it, and kept the fences in repair. One of the witnesses, Culver, says, he saw the fence up after Daily left the place, grass lying in the swarth and stacks of hay in the old house. He saw vegetables growing there, and turnips, but of the latter he is not certain.

"If the crops or profits of the place," say the court, in answer to the seventh point, "were sufficient to pay the taxes, it would be correct; otherwise it is not." The instruction of the court amounts to this: that although a tract of land may be seated, yet if the person remove from it, and sufficient produce is not raised on the land to pay the taxes, it ceases to be a seated tract, and may be sold. In this direction the court were in error; and in the answer to the ninth point the court were bound to give an explicit affirmative direction to the jury; for it is expressly decided in Harbesin v. Jack, before cited, that the accidental or temporary suspension of the actual occupancy of the land, does not place it in such a condition as would authorize a sale of it, for taxes, as unseated: nor, in the opinion of the court, would the absence of Daily from the land in 1818, and his return to it in 1819, be such a suspension of possession as would render the tract unseated. Having failed to give such instruction, there was error also in this part of the charge.

The point which now remains to be noticed is the first error: that in not reducing the reasons of the opinion to writing, on request. This point was expressly decided in Morberger v. Hackenburg, 13 *Serg. & Rawle* 28, where, after argument, it was held, that such omission is not error. It is there said, in executing the law, which requires the reasons to be filed, every judge acts on his own responsibility. If the suitor is aggrieved, his remedy is in another tribunal.

Judgment reversed, and a *venire de novo* awarded.