# Ellis *versus* Hall.

1. The occupation of land by an intruder gives it the character of seated land only to the extent of the land claimed by him.

2. The improvement of part of a tract of land by the owner, or by his tenant under a lease of the whole tract, makes the whole tract seated.

3. The quantity of land improved by the owner or his tenant is immaterial, provided it be sufficient to show an intention to seat the tract.

4. After a tract of land was seated, the county in which it was situate was divided by a line running through the tract and leaving the improvement in one county: *Held*, that this does not give to the unimproved land *in the other county* the character of an *unseated* tract. The tract remained one tract, and the seating of a part was the seating of the whole, and no part of it was liable to sale for taxes as unseated.

ERROR to the Common Pleas of *Montour county*.

This was an action of ejectment by Elizabeth Hall *v.* Stephen F. Ellis and George W. Andy, for 365 acres of land, lying in Montour, formerly Columbia county. Defendants pleaded severally, not guilty. April 29, 1852, verdict for the plaintiff. The jury assessed for Stephen F. Ellis, for the value of his improvements made on his part of the land, $113.25, and for George W. Andy, for the value of his improvements made on his part of the land, $359.33.

The plaintiff's title was founded upon a warrant to *Robert Brady*, dated 4th March, 1793, for 400 acres, in Northumberland county, and a survey made thereon of 427 acres, the 26th September, 1793. The purchase-money was paid by John Nicholson. March 10, 1808, Cadwallader Evans et al., Nicholson Commissioners, sold this tract, among others, to Robert Coleman. July 26, 1815, deed, Robert Coleman to Charles Hall. October 24, 1815, deed from Nicholson Commissioner to Charles Hall. Will of Charles Hall proven 6th January, 1821, devising the residue, &c., of his estate to his widow the plaintiff below.

The title of the *defendants* was founded upon a sale, made by the treasurer *of Columbia county*, of that portion of the Robert Brady tract lying in Columbia county, *as unseated land*, for the non-payment of county and state taxes for the years 1842 and 1843.

The Robert Brady tract originally lay in Northumberland county. By the division of Northumberland county, and the erection thereout of Lycoming and Columbia counties, 161 acres of the

[Ellis v. Hall.]

tract fell into Lycoming county, and 365 acres thereof into Columbia county, now Montour county.

In the years 1842 and 1843 the Robert Brady tract was assessed *in Columbia county*, as unseated land, and as containing 200 acres. In 1842 it was assessed for state and county tax; in 1843, with state and county tax. June, 1844, sold by treasurer to C. Cleckner, and deed to him, dated and acknowledged August 22, 1844. August 17, 1847, deed, Cleckner and wife to Stephen F. Ellis for the Robert Brady tract, containing 378 acres. April 2, 1850, deed, Stephen F. Ellis and wife to George W. Andy, for 125 acres of same. Defendants also gave evidence of the assessment of the Brady tract in Columbia county, for county taxes, in the years 1838, 1839, 1840, and 1841, and for state tax in the year 1841. These taxes were unpaid at the time of the sale by the treasurer in the year 1844.

Prior to the year 1833 between 3 and 4 acres had been cleared in the N. E. corner of the part of the tract lying *in Lycoming county*, and a small log house had been erected thereon. A man of the name of Thomas appears to have made this improvement. One Thatcher succeeded him, and occupied the building on it during the years 1831 and 1832. How they claimed did not appear on the trial. Christopher Gardner took possession of the improvement after Thatcher left. He was examined on the trial, and testified that he had possession from 1833 to 1838 under a parol lease from Mrs. Hall. In 1838 he took a written lease from R. C. Hall, as agent for Mrs. Hall. This lease was *of the whole tract*. It was described as a tract of land situate in Moreland township, *Lycoming county*, surveyed on a warrant to Robert Brady, containing 400 acres more or less. By it he bound himself to pay the taxes and clear —— acres each year. Gardiner testified that this small field of 3 or 4 acres was kept under fence by him from 1833 to 1845, and that during all that time it was under cultivation by him, that he raised on it rye, oats, buckwheat, and flax; and that when he did not have grain sown, the field was kept in grass; that *the log house* remained standing until a couple of years before he quit tilling the land, when he took it down and put the logs into the fence, and that the house was never occupied after he took possession of the improvement in 1833.

It was alleged on part of defendants, that the log house was without a roof in the fall of 1832, and that it was entirely down in 1838; that after the spring of 1833 the fence was allowed to go down, and the field to lay waste as a common, from 1833 to 1842; that in the latter year a temporary fence composed of logs, rails, and brush was put up, and a crop of buckwheat put in the field, and that, after the crop of buckwheat was taken off, the temporary fence was removed and the field has ever since laid open as a common.

[Ellis *v.* Hall.]

Gardner *resided* on the Josiah Haines survey *in Lycoming county*, which adjoined the Robert Brady, and which he also held under a lease from Mrs. Hall. Prior to 1839, Gardner cleared about 5 acres on the Haines survey. A small part of that clearing was over the line of *the Brady tract.* Gardner testified that the clearing over on the Brady tract was "in the neighborhood of an acre;" that he knew the division line between the Brady and Haines surveys. When he acquired that knowledge did not appear, whether before he made the clearing, or as late as a few months before the trial, when Carnahan made a survey of the Brady tract for the plaintiff, at which time Gardner was along. Carnahan was examined by the plaintiff, and testified, in chief, that "there is but one piece of cleared land on the Brady tract in Lycoming county" (the Thatcher improvement). He said, "In running the line between the Brady and Haines, I ran through a field and left about a rod of it on the Brady tract." And on cross-examination, he said, "The way I run the division line of Brady and Haines left about one-quarter of an acre of the Haines improvement on Brady."

No taxes were assessed or paid on the Brady tract *in Lycoming county.*

There was no improvement of any kind on the part of the Brady tract *in Columbia county*, at the time the taxes were assessed for non-payment of which that part of the tract was sold to Cleckner. On the part of the *defendants* it was contended that that part of the tract was properly assessed in Columbia county *as unseated land,* and that the treasurer's deed to Cleckner vested in him a good title to the same.

On the part of *the plaintiff* it was contended that the improvement made by Thomas, *in Lycoming county*, and kept up, as plaintiff alleged, by Gardner, gave the character of seated land *to the whole tract*, as well to that part in Columbia as to that part in Lycoming county; that the part of the tract lying in Columbia county could not legally be assessed with taxes as unseated land, and that Cleckner, consequently, took no title under the treasurer's sale to him.

CONYNGHAM, P. J., charged the jury according to the view presented on the part of *the plaintiff*, and his charge to that effect was the subject of the *first* assignment of error.

It was further contended on part of *plaintiff*, that the clearing over on the Brady tract by the tenant of the Haines tract, if done with a knowledge of the line of the tract and not through mistake, gave to the *Brady tract* the character of *seated land.* The Court charged affirmatively as to this, and the charge in this respect was the subject of the *second* assignment of error.

*Baldy*, for plaintiffs in error.—No part of the tract lying in

[Ellis v. Hall.]

Columbia county was improved. Where lands are not occupied in such a way as to afford the opportunity of levying the taxes assessed against them, or if there is *no personal responsibility for the taxes*, they may be sold as *unseated:* 1 *Watts* 504, Campbell v. Wilson; 7 *Watts* 390; 4 *W. & Ser.* 341. It was contended that in this case, there being no occupation of the tract in Columbia county, there was no means to levy the tax by distress. There was no residence on it in Columbia county, and therefore no personal responsibility.

It was contended that it was not a correct position, that where there is an occupation of any part of an original tract of land, in every case the whole tract is to be treated *as seated:* 5 *W. & Ser.* 451, Mitchell v. Bratton; 3 *Id.* 238, Harper v. McKeehan; 1 *Watts* 504, Campbell v. Wilson. That the object of the law being the collection of the taxes, a tract is to be considered with reference to its character in the county in which it is assessed, without regard to the character of the residue of it in another county.

2. He contended that there was no evidence that the clearing over the line of the Haines tract was done with the intention to render the Brady tract seated. · A clearing over the line upon a tract of woodland, for a few feet or a few yards, will not take from it the character of unseated, though the cultivation of several acres may have that effect: 2 *Watts* 421; 5 *Watts* 441, Fish v. Brown. The clearing over under mistake as to the line will not render such a tract seated: Sect. 21, act of 12th April, 1842 (*Acts* 262); *Purdon*, title "Unseated Lands," which provides that "no clearing over by mistake shall ever be deemed to render land seated."

*Johnson*, for defendant in error.—The Brady tract was a settled tract when it was within the lines of Northumberland county. The house was an old one in 1832. The land improved, about 4 acres, was constantly cultivated until 1845. It was supposed by the owner to be entirely in Lycoming county. From 1832 till 1838, Gardner held under a parol lease, and from 1838 till the sale to Cleckner in 1844, Gardner held under a written lease, in which the tract was described as surveyed on a warrant in the name of Robert Brady, and as containing 400 acres, more or less. The county line was not marked on the ground before 1850.

No part of a tract on which there is an improvement, however inconsiderable, is liable to sale for taxes *as unseated*. In the cases referred to in 5 *W. & Ser.* 451, 3 *Id.* 238, and 1 *Watts* 503, the tracts were divided by lines on the ground. A tract of land with a person residing on it, is not unseated as to that part which is not cleared, whether the settler entered with or without title, or whether the resident has property on it sufficient to pay the taxes or not: 1 *Watts* 503, Campbell v. Wilson; 2 *Id.* 126; *Id.* 423; 6 *Id.*

[Ellis *v.* Hall.]

273. As to the meaning of *unseated* as applicable to land, reference was made to 10 *Ser. & R.* 256; 9 *Watts* 348; 7 *W & Ser.* 248.

Both tracts occupied by Gardner belonged to Mrs. Hall. There was no reason for raising a question as to whether his clearing on the Brady tract was by mistake or design. As to the subject of clearing over, he referred to 9 *Watts* 348, 4 *Barr* 214, 2 *Watts* 422.

The opinion of the Court, filed Sept. 28, was delivered by

Lowrie, J.—Leaving out of view some exceptions instituted by recent legislation, the general rule of law is, that taxes on seated lands are a charge upon the person merely, and those on unseated lands are a charge upon the land merely: 10 *Ser. & R.* 256; 9 *Id.* 112; 6 *Watts* 272. As, therefore, the defendants below claim under a sale for taxes, it is necessary to the plaintiff's success that it appear that the land was seated, and of consequence, not liable to sale for taxes.

When does a tract of wild land become seated? We advance one step in the investigation when we answer: Whenever it is so far seated or occupied as to make the owners or occupants personally chargeable with the taxes. And what is the character of the occupancy that renders the owners or occupants personally chargeable? Whenever any one enters upon the tract with the intention to improve it and derive profit from it: 6 *Watts* 272; 2 *Id.* 422. He thus declares his intention to seat it, and to bear the personal charges consequent upon his act.

It was at one time supposed that *the intention* to derive profits from the particular tract, as such, had nothing to do with the question, if, as matter of fact, profits were derived from it: 7 *Watts* 393; but this error has been corrected: Act 12th April, 1842, s. 21, *P. L.* 266. The intention must necessarily enter into the question; for no man can properly be charged with taxes on land which he does not claim to own or use, nor beyond the extent of his claim: 8 *State Rep.* 175. Hence, though the owner of a tract cannot use any part of it without being personally liable for the taxes on the whole, yet the mere intruder, or one who is not the true owner, may claim but a portion of the whole tract, and his liability for taxes is limited accordingly: 5 *W. & Ser.* 454; 3 *Id.* 245; 1 *Watts* 503. A seating of a tract by an intruder may therefore have much less effectiveness than one by the owner or his lessee; for in such case, not the owner's, but the intruder's intention is looked to. But an actual improvement by the owner for the purpose of deriving profit must be regarded as a seating of the whole tract, and is, *per se*, an acceptance for the time being of the personal liability for taxes, and a consequent discharge of the land. And so it must be when the improvement is by a tenant of the owner, under a lease of the whole tract.

[Ellis *v.* Hall.]

As the law has not declared what shall be the extent of improvement which shall amount to a seating, we cannot do it.   The quantity improved is entirely immaterial, provided it be sufficient to show an intention to seat.   If then, as here, any portion of the land was improved by a tenant of the owner, with intention to derive profits from it under an improving lease of the whole, this is a seating, sufficient to charge the tenant and the owner personally with the taxes, and to discharge the land from liability as unseated land.   And this we understand to be the instruction of the Court to the jury.

But it is objected that by the creation of a new county, one end of this tract is in one county, and the other in another, and that, the improvement being confined to one county, that part which is in the other county remains unseated.   If this is so, then a law passed for one purpose is made to operate for another.   A law changing the boundary of a county changes the law as to unseated lands.   A tract that is really seated becomes in part not so by a law passed for no such purpose.   This cannot be.   The change of the county line may have given rise to some unforeseen circumstances which cannot be rightly dealt with without some additional legislation; but certainly it is not our province to furnish this legislation, by declaring that one tract is two tracts, if a county line runs through it.   A tract of land is a term well understood in legislation and judicial nomenclature, and though parties may make several tracts out of one, and so may the Legislature when that is their purpose, yet the same result does not arise from a different legislative purpose.   If we are to adapt the law, by construction, to this change of circumstances, as in proper cases we must do, why may we not rather follow the analogy of the case of a tract traversed by a township line, Act 11th July, 1842, s. 59, *P. L.* 331, and declare this whole tract taxable in the county where the improvements are actually made; or decide that the collectors in one county have power to go into another to enforce the payment of taxes in such case?   Certainly either of these views is quite as reasonable as that which we are asked to affirm.

                                        Judgment affirmed.