## Quigley, Appellant, v. Reiff.

*Taxation—Farm land—Mansion house—Township lines—Act of July 11, 1842, P. L.* 321.

Where an owner of a farm divided by township lines, builds a new dwelling house across the township line from his old house, and removes his family to the new house, but does not divide the land in any way, and does not conduct a new business thereon, but installs a farmer in the old house, who farms the land on shares as a tenant under some control of the owner, the whole farm becomes taxable in the township in which the new house is situated.

Argued Nov. 17, 1908. Appeal, No. 247, Oct. T., 1907, by plaintiff, from decree of C. P. Chester Co., No. 474, In Equity, dismissing bill in equity in case of George Quigley v. J. B. Reiff, Tax Collector of East Vincent Township. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ. Reversed.

Bill in equity for an injunction. Before BUTLER, J.
The opinion of the Superior Court states the case.

*Error assigned* was decree dismissing the bill.

*W. E. Bushong,* for appellant.—This case is ruled by the Act of July 11, 1842, P. L. 321, sec. 59, "That hereafter the

assessors of the several counties within the Commonwealth, shall, on seated lands, make the assessment in the township in which the mansion house is situated, where township lines divide a tract of land."

The dwelling house on the farm in which the owner resides must be regarded as the mansion house of the farm within the meaning of the act: Bausman v. Lancaster County, 50 Pa. 208; Com. v. Wheelock, 13 Pa. Superior Ct. 282; Follett v. Butler County, 219 Pa. 509.

*Truman D. Wade,* for appellee, cited: Com. v. Wheelock, 13 Pa. Superior Ct. 282.

OPINION BY RICE, P. J., July 14, 1909:

The plaintiff was the owner of a farm, containing sixty-four acres of land, intersected by the boundary line between East Vincent and East Pikeland townships, seven acres of the land being in the former township and fifty-seven in the latter. Up to the year 1906 there was but one dwelling house on the premises, and as it and the farm buildings were in East Vincent township, the whole tract was assessed and the taxes thereon were paid in that township. But prior to the time when school taxes for the year 1906 were levied on the entire tract by the authorities of East Vincent (these being the taxes in question) the plaintiff moved from this old dwelling house to a new one, the erection of which he had just completed, on the East Pikeland part of his farm. Thereupon the assessor of East Pikeland assessed the entire tract upon the assumption that this new dwelling house was the "mansion house" of the tract within the meaning of the act of 1842. The plaintiff, claiming it to be such, paid to the collector of that township the tax levied upon the entire tract for the year 1906, but refused to pay the tax levied by the authorities of East Vincent for the same year, and filed this bill to restrain the collector from collecting it. If there were nothing more in the case there would be scarcely room for argument that the plaintiff was taxable in East Vincent upon the whole or any part of the tract. But it appears that about the time he moved into the new house Frank P. Leighton went into

occupancy of the old house, and conducted the farm and dairy for about a year, under an oral agreement with the plaintiff. It is undisputed that under this agreement the plaintiff furnished the farm implements, eight of the twelve cows, two of the four horses, the chickens, one-half of the fertilizer and seed, and that each was to have one-half of the produce of the farm and pay one-half of the taxes. The plaintiff testified that under their agreement Leighton was subject to his control in the conduct of the farm and was a mere employee. Leighton in his testimony denied this, and asserted that he had the right of control, but he admitted that the plaintiff gave him advice and even directions as to the conduct of the farm in some particulars which he followed, one instance being directions as to crops to be planted, that he came upon the farm from time to time for his own purposes, as, for example, hauling wood, "something like that, or posts for himself," and that he sought to exercise general supervision. Whilst there was evidence which would have sustained a finding that the plaintiff retained and exercised complete control of the conduct of the farm, yet we are unable to say that it was manifest error for the court to find that by the oral agreement under which Leighton entered he was tenant of the farm under a rental of one-half the produce. This finding being supported by evidence, and not being manifestly erroneous, must be accepted by us as establishing the fact, but the other undisputed facts above referred to should be considered in connection therewith in determining the relation of the new dwelling house to the tract, and the further significant fact should be borne in mind that no particular part of the land around the new dwelling house was marked off and separated from the remainder of the tract by fence or other visible monument.

Section 59 of the Act of July 11, 1842, P. L. 321, provides, "That hereafter the assessors of the several counties within this commonwealth, shall, on seated lands, make the assessment in the township in which the mansion house is situate, where township lines divide a tract of land." In any view of the case the act is applicable. There is a division of a tract of land by the boundary line of two townships. The question for decision is, what, at the time of the assessment, was the extent of the tract

so divided; stating the question more precisely, does it result from the facts above referred to that there was such constructive severance of the house in which the plaintiff dwelt from the remainder of the tract as prevented it from being considered by the assessor as the mansion house of the tract? We cannot agree that it stands in the same relation to the entire tract as did the house in the borough to the tract in question in Commonwealth v. Wheelock, 13 Pa. Superior Ct. 282. That was the dwelling of persons who had no connection with the title to or interest in the farm, and was not used directly or indirectly in the farming operations. This is the dwelling house—the mansion house—of the owner of the tract; it was upon the tract and not visibly separated from it; it was not used for any other purpose than as his dwelling house; no business separate and apart from the farming of the land was carried on in it, as was the case in York Haven Water & Power Company's Appeal, 212 Pa. 622; it was so situated as to enable the owner to oversee the farming operations, the use made of his property employed therein, the compliance of his farmer with the stipulations of their agreement and the requirements of good husbandry; and it is justifiable by the evidence to say that it was actually used for that purpose. In Bausman v. Lancaster County, 50 Pa. 208, the precise question for decision was whether or not the act applied when a portion of the farm with the mansion house was in a township and the remaining portion was in an adjoining city. In deciding this question the court said: "This act was plainly remedial. It aimed to prevent the mischief which would flow from contests between the assessors of adjoining municipal divisions, respecting the right and duty of assessing property intersected by the division lines of districts, and it guarded against the low valuation which assessments of an entire property in parcels tended to produce. It should, therefore, receive a liberal construction, both as a remedial statute and as tending to produce equality of taxation." The same principles were adhered to in the decision of Bennethum v. Eckert, 7 W. N. C. 373. Viewing this case in the light of this rule of construction and the considerations referred to in the earlier part of Justice STRONG's opinion as having led to the enactment of the law, we are of opinion

that its true intent and meaning will be carried out by holding that under all the facts the dwelling house of the plaintiff was the mansion house of the entire tract, and not simply of that portion of it upon which the superstructure stands. We are of opinion also that he must be regarded as the "principal occupant" of the tract; so that the same result is reached, even though it be conceded, as argued by the appellee's counsel, that the act of April 5, 1842, P. L. 240, extended to Chester county by the act of June 23, 1842, P. L. 302, controls, and not the act of July 11, 1842, P. L. 321.

The decree is reversed, the bill is reinstated and an injunction is awarded as prayed for in the bill, the costs to be paid by the appellee.