Louis D. Ekin and Lillian S. Ekin, his wife, et al., Appellants *v.* The Board of Commissioners of the County of Allegheny, et al., Appellees.

Argued October 11, 1985, before Judges CRAIG and BARRY, and Senior Judge BARBIERI, sitting as a panel of three.

*Thomas P. Cole, II,* for appellants, individuals and North Huntingdon Township.

*Lee V. Price,* with him, *Alfred C. Maiello,* for appellant, Norwin School District.

*James J. Dodaro,* Solicitor, with him, *Ira Weiss,* Deputy Solicitor, for appellee, County of Allegheny.

*Evan E. Lloyd,* for appellee, The Township of South Versailles.

*Robert P. Costello,* for appellee, The McKeesport School District.

*Arnold V. Plum,* with him, *W. Richard Booth, Plum & Booth, P.C.,* for appellee, The Borough of White Oak.

OPINION BY SENIOR JUDGE BARBIERI, December 17, 1985:

Appellants[1] have appealed here an order of the Court of Common Pleas of Greene County which dismissed their exceptions to that court's order of July 27, 1984 and also dismissed their motions for judgment n.o.v. and for a new trial. The common pleas court's order of July 27, 1984 determined that the boundary line between Allegheny and Westmoreland Counties is the line as surveyed by the United States Coast and Geodetic Survey in 1934. That order further directed that the properties of the individual Appellants be assessed in the respective counties and municipalities according to that boundary line. We affirm.

The following facts are pertinent. Louis D. Ekin, one of the Appellants here, owned a parcel of land which straddled the Allegheny-Westmoreland county line. On March 2, 1956, Ekin recorded a subdivision plan with the Recorder of Deeds office for Westmoreland County. The plan of lots filed by Ekin did not indicate where the county line bisected the plan and further failed to show in which of the counties each of the lots was physically located. Subsequently, as lots were sold out of the Ekin parcel according to the plan, deeds were recorded in Westmoreland County although the overwhelming majority of the lots were physically located in Allegheny County. Although the

---

[1] Louis D. Ekin, Lillian S. Ekin, John W. MacClaren, Dorothy M. MacClaren, John H. Baldwin, Patricia A. Baldwin, Milton H. Shapiro, Patricia Shapiro, Eileen M. Mossburg, Diane M. Mossburg, Richard G. Gangle, Barbara L. Gangle, Thomas E. Clark, Margaret R. Clark, Charles A. Provan, Marjorie B. Provan, Donald W. Rhodes, Edith J. Rhodes, Louis Slade, Eileen K. Slade, John L. Morrison, Margaret A. Morrison, Sidney A. Jackson, Marion Jackson, Arthur T. Trexler, Edith M. Trexler, The Township of North Huntingdon, The Norwin School District, and The Board of Commissioners of the County of Westmoreland.

official tax maps for both Allegheny and Westmoreland County clearly showed that these properties were, for the most part,[2] located in Allegheny County, they were assessed by Westmoreland County and its municipalities which also provided the Appellants with the necessary municipal services.

In 1982, South Versailles Township, Allegheny County, in which a number of the subject properties are physically located, appealed the 1982 assessment by the Board of Property Assessment Appeals and Review for Allegheny County (Allegheny Board) which failed to show an assessment for those subject properties. After the Allegheny Board decided not to change that assessment, South Versailles Township appealed the assessment to the Court of Common Pleas of Allegheny County which docketed the appeal at Docket No. G.D. 83-02161.[3] In January 1983, Appellants filed an action with this Court invoking our original jurisdiction pursuant to Section 302(a) of the County Code, Act of August 9, 1955, P.L. 323, *as amended,* 16 P.S. §302(a), and Section 2(a) [1310] of the Judiciary Act Repealer Act (JARA), Act of April 28, 1978, P.L. 202, 42 P.S. §20002(a) [1310], and requested that this Court designate a neutral court to determine the correct boundary line between Allegheny and Westmoreland Counties. Pursuant to 16 P.S. §302(a),[4] we designated the Court of Common

---

[2] The tax map indicates that the Elkin, Morrison, MacClaren, and Rhodes properties actually straddle the county line. Of those properties, only the Elkin and Morrison properties are mostly located in Westmoreland County. Slip Op., Court Exhibit "A," R.R. 409a.

[3] By order dated April 27, 1973, this Court stayed the assessment appeal of South Versailles Township pending resolution of the county boundary issue. Accordingly, that action is still pending in Allegheny County Common Pleas Court.

[4] 16 P.S. §302(a) reads as follows:

§302. *Superior Court to designate neutral court; appointment of commission*

Pleas of Greene County to hear this boundary dispute. After a hearing, that court confirmed that the Allegheny-Westmoreland County boundary line was that line as surveyed and found by the United States Coast and Geodetic Survey pursuant to an agreement entered into between Allegheny and Westmoreland Counties dated February 6, 1934.[5] The common pleas court further directed that the properties of the individual Appellants should be assessed by the counties and municipalities in which they are physically located in accordance with the 1934 county line as confirmed by the court. Appellants filed exceptions to that order and moved for a judgment n.o.v. and a new trial. By order on October 27, 1984, the common pleas court dismissed those motions and the exceptions. It is from that order that Appellants now appeal.

In this appeal, Appellants contend that (1) the common pleas court erred by failing to appoint a commission to determine whether the present boundary line between Allegheny and Westmoreland County should be moved; (2) that the common pleas court's confirmation of the 1934 line as the county boundary line constituted an abuse of discretion; and (3) that the common pleas court abused its discretion and erred as a matter of law when it directed that the subject properties be assessed by the counties and municipalities in which they were physically located. We shall address these issues in the order stated, being

(a) The Court, upon the filing of such petition, shall designate a court of a county not affected by the question and not adjoining any of the counties involved to act in the proceeding. The court so designated shall sit in its home county.

Section 2(a)[1310] of JARA repealed that part of 16 P.S. §302 which referred to the Superior Court and vested jurisdiction in such cases in this Court.

[5] R.R. 95a-97a.

mindful that our scope of review, where the common pleas court has taken testimony and heard the matter de novo, is limited to determining whether that court's order constitutes an arbitrary or capricious abuse of discretion or whether that court committed an error of law. *Huntingdon County Line, Appeal of Mifflin County*, 8 Pa. Superior Ct. 380 (1898); *Huntingdon County Line, Appeal of Huntingdon County*, 11 Pa. Superior Ct. 386 (1899).

We shall first review Appellants' contention that the common pleas court erred by failing to appoint a commission pursuant to 16 P.S. §302(b). Section 302 (b) provides that:

> (b) *If it appears to the court so designated that the county line, or any part thereof, shall be surveyed or marked*, it shall appoint a commission, composed of three surveyors or professional engineers in civil engineering, to act for the court as hereinafter provided. (Emphasis added.)

The common pleas court held that the appointment of a commission was neither necessary, nor appropriate, in that the court found that "the boundary line has been long fixed, and is well and clearly established." Slip op. at 8, R.R. 402a.

As noted by the common pleas court, the appointment of a commission is within the discretion of the designated court only where justified to resolve a disputed boundary line. The authority which was previously contained in Section 305(a) of the County Code, 16 P.S. §305(a), to readjust county boundaries where the existing county line became inconvenient or improper, was abrogated by Article 9, Section 8, of the Pennsylvania Constitution.[6] Under that article, the

---

[6] Appellants also contend that this constitutional issue was improperly raised in that the Appellees failed to inform the Attorney

General Assembly had until April 23, 1970 in which to enact uniform legislation to establish a procedure for altering the boundaries of municipalities. The failure of the General Assembly to so act abrogated all such pre-existing legislation dealing with altering municipal boundaries and left initiative and referendum as the sole method of changing municipal boundaries. *Derry Township Supervisors v. Borough of Hummelstown,* 458 Pa. 396, 326 A.2d 342 (1974). Article 9, Section 14, of the Pennsylvania Constitution clearly includes counties in its definition of "municipality" as used in Article 9. Therefore, the provisions of Article 9, Section 8, are clearly applicable to the boundary alteration provisions of the County Code, specifically 16 P.S. §§301, 302 and 305. Since Appellants concede that there exists no dispute as to the present location of the Allegheny-Westmoreland County boundary line, there was no need to have that line either surveyed or marked and the common pleas court acted correctly when it refused to appoint a commission under 16 P.S. §302(b).

---

General of the Commonwealth of their challenge as required by Pa. R.C.P. No. 235. Rule 235 requires that where an Act of the General Assembly is alleged to be unconstitutional and the Commonwealth is not a party to the action, the party raising the question of constitutionality shall promptly give notice thereof by registered mail to the Attorney General of the Commonwealth. While Appellees failed to comply with Rule 235 in this action, we find that they were not challenging the constitutionality of any Act of the General Assembly. Rather, the Appellees contended that the Constitution of 1968 *abrogated* pre-existing municipal boundary change legislation. The Pennsylvania Supreme Court has already ruled that Article 9, §8, of the Constitution of 1968 abrogated all pre-existing municipal boundary change legislation. *See Derry Township Supervisors.* Since the Appellees raised the issue of constitutional abrogation, rather than the unconstitutionality of the statute in question, we hold that the notification requirement of Rule 235 is not applicable to the case at bar.

We now turn to Appellants' second contention, which is that the common pleas court abused its discretion when it confirmed the 1934 county boundary line as the correct boundary line. The gravamen of Appellants' argument is that the common pleas court abused its discretion when it failed to relocate the county line so that the properties of the individual Appellants would be situated in Westmoreland County rather than Allegheny County in light of the demographic and geographic evidence presented by the Appellants. Appellants point to the fact that the Allegheny Board had historically treated the subject properties as if they were part of Westmoreland County and had refused to assess those properties in Allegheny County. Appellants further point out that the children who reside at the subject properties have always attended the Norwin School District, in Westmoreland County. Were the common pleas court decision upheld, Appellants stress, the children will experience a severe disruption to their education necessitated by their changing from Norwin to McKeesport School District. Finally, Appellants contend that the common pleas court ignored the geographic reality of the area in that the subject properties are not accessible from Allegheny County except through North Huntingdon Township, in Westmoreland County. While initially appealing, Appellants' arguments must fail in light of the mandate of Article 9, Section 8. As we previously noted, the authority which previously existed under 16 P.S. §305 to revise county boundary lines was abrogated as of April 23, 1970 when the General Assembly failed to enact uniform legislation to provide for altering municipal boundaries. *See Derry Township Supervisors.* Therefore, under Article 9, Section 8, as interpreted by our Supreme Court in *Derry Township Supervisors* and by this Court in *In*

*re Establishment of Boundary Between Collier Township and Robinson Township,* 25 Pa. Commonwealth Ct. 230, 360 A.2d 841 (1976), the common pleas court did not have the power or authority to alter the existing county line and it did not abuse its discretion by confirming the county line as determined by the 1934 survey conducted by the United States Coast and Geodetic Survey.

We consider now Appellants' final contention which is that the common pleas court abused its discretion and erred as a matter of law when it directed that the subject properties be assessed by the counties and municipalities in which they are physically located as determined by the 1934 county boundary line. They argue that in so ordering, the common pleas court ignored the Mansion House Rule embodied in Sections 411 and 413 of the Act of May 22, 1933, P.L. 853, *as amended,* 72 P.S. §§5020-411 and 5020-413, and Section 608 of the Act of May 21, 1943, P.L. 571, *as amended,* 72 P.S. §5453.608, as well as exceeding the scope of its jurisdiction under 16 P.S. §302(a) and 42 P.S. §20002 (a) [1310].

The "Mansion House Rule" provides that where a tract of land is divided by a county line, the whole tract is assessable in the county in which the mansion house is located. *Bausman v. Lancaster County,* 50 Pa. 208 (1865); *Ellis v. Hall,* 19 Pa. 292 (1852). The rule is aimed at preventing the mischief which would flow from contests between the assessors of adjoining municipal divisions, respecting the right and duty of assessing property intersected by the division lines of districts, and it guarded against the low valuation which assessments of an entire property in parcels tended to produce. *Bausman,* 50 Pa. at 211. Appellants contend that the original mansion house of the Ekin tract was located in Westmoreland County and,

therefore, the subdivided lots which are derived from that original tract are properly assessed in Westmoreland County under the Mansion House Rule. Our research into the applicable case law indicates that this contention is incorrect.

The Mansion House Rule, as discerned by our study of the applicable case law, applies to individual tracts of land depending upon their particular use. The Mansion House Rule as applied to a single tract does not carry over to all of the smaller parcels which are created by a subdivision of that original tract. An example of this rule is found in the 1905 Pennsylvania Supreme Court case of *York Haven Water & Power Company's Appeal,* 212 Pa. 622, 62 A. 97 (1905). There, a power company owned a four hundred acre tract of land in York County which was bordered on the east by the Susquehanna River. The company had erected a mansion house in York County as well as various farm buildings and a warehouse in which it stored materials used in its business. Subsequently, the company erected a crib dam in the Susquehanna River, south from which ran a retaining wall, which was part of the dam, at the end of which was erected a power house where electricity was generated using the water power of the river. The major part of the dam, retaining wall and the power house were determined to be located in Lancaster County which assessed the power house. The company argued that the power house and associated improvements should be assessed in York County since the original mansion house is located there and the power house was erected on part of the original four hundred acre tract covered by that original mansion house. In rejecting that argument, the Pennsylvania Supreme Court held that the portion of the farm which was occupied by the dam and power house was no longer used as part of, or in connection

with, the original farm and was therefore severed therefrom and used for a separate and independent purpose. That, the Court wrote, was the controlling fact and the location of the original mansion house in York County did not draw that portion of the tract where the power house was erected, which was in Lancaster County, into York County for the purposes of taxation. *Id.* at 624, 62 A. at 98.

The *York Haven* decision alone would require us to reject Appellants' reliance upon the Mansion House Rule to place their properties in Westmoreland County for the purpose of taxation. We are further persuaded by our Superior Court's decision in *Quigley v. Reiff*, 39 Pa. Superior Ct. 425 (1909). In *Quigley*, the owner of a farm which was divided by a township line constructed a new dwelling house across the township line from the original house. The owner subsequently moved his family to the new dwelling and placed a tenant in the old dwelling. The Superior Court, citing *Bausman*, held that the dwelling house in which the owner resides must be regarded as the mansion house for purposes of the Mansion House Rule and the property was properly taxable in the township in which the new dwelling house was located. *Id.* at 428-429. The clear implication of the rationale of *Quigley* is that the location of the original mansion house is irrelevant where circumstances change the use of that house or of the parcel in general. *See also, York Haven.* Therefore, in light of the foregoing, the common pleas court was correct in failing to extend the Mansion House Rule as applied to the original Ekin tract to all of the subdivided parcels which were derived from the subdivision of that tract.

Finally, there is Appellants' argument that the common pleas court exceeded the scope of its authority under our designation and 16 P.S. §302(a) and 42 P.S. §20002(a) [1310] when it directed that the subject

properties be assessed in the counties and municipalities in which they are physically located. In so directing, the common pleas court recognized that the sole reason for the boundary dispute was over where these subject properties were to be properly assessed. In directing that the properties were to be assessed by the counties and municipalities in which they are physically located as determined by the 1934 county boundary line, the common pleas court was only restating the law. Accordingly, the common pleas court did not commit error by so stating the law.

Having disposed of Appellants' contentions in favor of the Appellees,[7] we shall affirm the order of the common pleas court.

### ORDER

Now, December 17, 1985 the Order of the Court of Common Pleas of Greene County at Docket No. Misc. No. 22, 1983, dated October 29, 1984, is hereby affirmed.

---

[7] The Board of Commissions of the County of Allegheny, The Board of Property Assessment Appeals and Review for Allegheny County, The Township of South Versailles, The McKeesport School District, and the Borough of White Oak.